Mr. Flaxman. Good morning, Your Honor. Thank you. May it please the Court, about 20 years ago, the Illinois Supreme Court was presented with a case that had horrendous facts similar to this case. The situation was undeniably tragic. In that case, Doe v. Calumet City, the Illinois trial court had applied well-settled Illinois law and dismissed the case. The Illinois appellate court had followed well-settled Illinois law and dismissed the case. The Illinois Supreme Court changed the law and said that there could be a cause of action under state law for what happened in that situation. The Illinois Supreme Court did not say this is a one-time only decision, but it drew back from that decision and eventually in 2011, around the time this lawsuit was filed, withdrew and said that's not the law anymore. There is no specific holding that there is a willful and wanton exception to a provision of the Illinois Tort Claim Act. One of the questions that the district court was presented with and overlooked in this case is, what would the Illinois Supreme Court do with the facts of this case? Would the undeniably tragic facts of this case make it create a new exception? Or make it say that, well, when a police officer comes upon a 15-year-old girl who's drunk and three males who are also drunk and they're outside in a dark place, does the Domestic Violence Act apply where the officer should assume that there's a dating relationship between at least two of these young people? Or should the officer have a duty under Illinois law to do custodial community caretaking and respond to the drunken children who are out there alone, especially a drunken girl who's with three boys? If the district judge had tried to make a prediction about that, he would have said, I believe, that I can't predict what the Illinois Supreme Court will do under these horrendous facts, this undeniably tragic circumstance. I'm going to not exercise jurisdiction over the state law claims. I'm going to send this back to state court. This is your 1367C argument. And I do understand that there are reasons why the district court might have exercised its discretion to do what often happens and dismiss without prejudice. But the district court, number one, does talk about this in his opinion. And he explains why it is he doesn't really think the law is unclear enough in Illinois that he thinks the Illinois Supreme Court will take the leap. And he also, I don't know, I mean, how do you get around the fact that 1367C lists these reasons why a district court may choose to relinquish jurisdiction? But I don't see the word must anywhere in this statute. There is no must in the statute. And in the brief, we've crept in this wrong word that I apologize for in brackets where I think we used must rather than should, which was in the original case. That's wrong. No, the district judge has discretion, but this court has consistently said that the district judge, when there's been no work done other than briefing a motion to dismiss, when there are novel questions raised, should send you back to state court and where the case had originally been filed. And the district judge is very sure of the correctness of his view. But this is a fluid area in Illinois, as shown by the Doe case, which with an appellate court had affirmed or had held that there could be relief. And the Illinois Supreme Court said not on that ground, but on some other grounds. And these cases with undeniably tragic facts work better or have the Illinois courts have the ability to change the law. And this court has to follow the Supreme Court, where we have the Ducheney, where we still have an argument under Ducheney. We haven't abandoned that or waived that, where the officer left the girl in a worse position than she'd been before he got there. Well, see, that's where I don't understand that. I mean, we all, whatever you may think of Ducheney, it's the law. And Ducheney is a situation where the family services person comes to the house, the child is in terrible shape, the person knows it, doesn't do anything about it, and then leaves. And it seems to me this is very much the same situation. You know, maybe Officer Del Bocio was lazy or indifferent or whatever he may have been. He goes there. She's already drunk. She's already in the situation you've described. And he rolls the window down, exchanges a few words, leaves. And then it's the apartment manager, Mr. Fregoso, who's the good guy here. You know, he calls 911 again, and at least things get interrupted at that point. But I don't see how Officer Del Bocio leaves her, or Bocio, however he pronounces it, and worse off. Our argument is that by giving the youths a pass, he emboldened them. They could think to themselves, nothing's going to happen to us. The cops aren't coming. We're home free. We could have our way with the young woman. That's our argument. I would feel much, much better about this case losing this case if there had been summary judgment proceedings. But this case was dismissed on the original complaint without an opportunity to amend, without any discovery. And these young- Now, if you had been given an opportunity to amend, would you have dropped the 1983 claim and asked for a remand at state court? I get your view altogether that there are many doctrines of state law that might be of more use to you than 1983 is. I would have done whatever I could to get the case back in state court, where there's more innovation as possible because the Illinois Supreme Court- So you would not have replugged the 1983 claims? Well, this is 20-20 hindsight. Absolutely not. I'm not looking back at it today. I would have looked at it and said, this is a stretch of the Cheney, and we're probably going to lose after summary judgment, and we should just go to state court and get relief for the young woman. That's what I would have said. We do have the Class of 1 claim, which the district judge said obviously is futile because you can't prove any of that stuff. But we have an exceptional police officer here. And 20 years ago, very few people thought that police officers tortured people to get confessions in Chicago. Few people thought that there were commanders out there holding guns in people's mouths to show them who's the boss. And nobody thought that police officers run over people and then make up stories about responding to calls. But you don't have anything that shows that he ran over the children because of their race? They paid $4.5 million. Right. Because of their race. I don't want to testify, but I know a lot of police officers, and there's racism among the white folks who were police officers. And that comes from working in the community where there are criminals who happen to be of a different race, and it's easy to stereotype, and we see it all the time. Those weren't the allegations in that case. In the earlier case. In the earlier case involving the children. No, the earlier case, those weren't the allegations, but I suspect. The problem is, yes, he had a past, but the link between that past and what he did on this fateful night seems to be nonexistent, really. Again, I would feel a lot more comfortable if this was on summary judgment and we had a chance to predict. And there you run into Twombly and Iqbal, and you have to do a little bit more than just spin out in your imagination. I've been trying to think about this case. What facts could somebody rationally have found at the time that you're actually drafting the complaint that would push the line, as the court says, from the merely possible over into the plausible? I mean, it's easy to say that, but then really to think of precise facts and a history of racism on this officer's part. Sometimes you can find people to testify to things. That would have been interesting. There might have been something else, but the problem is here we're just imagining that maybe there's something behind it. Well, we could have alleged in good faith that the officer is known to refer to African Americans by that N epithet, but we didn't have a chance to amend or even to proceed with the complaint. There was a very long time, was there not, between your filing the 59 motion and the resolution? It was almost two years, and District Judge could have just said deny it and we could have been here then, but I don't know why it took so long either. Mr. Flex, I'm sorry. Go ahead, please. Do I understand you to be saying that the Illinois law would have to change for you to prevail in state court? Well, it would have to be applied to the unique facts of this case, and the Illinois Supreme Court could say that 4-102 doesn't apply to the failure to exercise community care taking for intoxicated children. That's not in 4-102. It also could say that there's a potential violation of the Domestic Violence Act, which has imposed an affirmative duty on police officers to intervene on people who are in danger when there's a dating relationship between them. And I think when you come across three intoxicated youths out alone and a young girl, you could assume there's some kind of dating relationship. If I was on the Illinois Supreme Court, that's what I would hold. Mr. Flexman, you haven't mentioned yet the two allegations that you make in your brief, that the officer falsely reported to dispatch that no one was there when he got there, and secondly, that he not only didn't report that, but he also called off another unit that was responding to the same call that he had been on. How does that make a difference in the Ducheney calculus? Well, that's the second theory of our Ducheney argument, that he placed her in a worse position by calling off the other officer who would have come to the scene and presumably acted the way a police officer should have. I thought your argument was that he cut off Mother Hill. He did. He told them, don't come. Nobody's here. It's a bogus call. We would argue that any other officer who arrived on the scene would act responsibly and talk to these young people, find out, did they really live in this housing project? Was the girl safe? And why were these young people intoxicated? Maybe they should be charged with violation of Illinois law, which it is to be under 18 or intoxicated. Okay, we can save it for rebuttal. Mr. Liss. May it please the court. My name is Daniel Liss, and I represent the appellees Mark Del Bocio and the Village of Arlington Heights. Your Honor, the Constitution is a limiting document, and under it, state actors cannot be held liable for harms that are caused by private actors. The Doctrine of Qualified Immunity and the Tort Immunity Act exist so that in cases like this, officers can exercise the discretion that they're forced to exercise each day without fear of facing lawsuits. So why don't we focus for a moment on the 1367C argument? So just for the time being, we'll assume you're right and that it's not fruitful to think about DeShaney. But you seem to think that a motion is necessary before a district court judge should consider whether to relinquish jurisdiction. And I have read 1367C any number of times. I really don't even want to count. And it doesn't say anything about people making motions. This is a duty imposed directly on the district court. And so this is a very early stage. As Mr. Flaxman points out, it's 12B6. State law, apart from the Tort Immunity Act, imposes obligations on police officers that go well beyond those that the Supreme Court has seen in the Constitution. And so I can think of all sorts of communities around Chicago where they arrest teenagers who are a lot less intoxicated than this young lady was. They pick them up for being out after curfew. They do all sorts of things. And they do so pursuant to laws that communities have passed. They're acting absolutely within their rights. So this officer who doesn't comply with his state law duties is troublesome to me, especially when it would have been so easy just to say, let's just relinquish jurisdiction, let the chips fall where they may in the state court. I understand, Your Honor. First of all, our argument is not that you need a motion to request that the court relinquish jurisdiction. But you keep saying they never ask, they never ask, they never ask. And to me, asking means somehow a motion. I don't care if it's a letter or a motion. A request in response to a motion to dismiss is what we're saying that should have been done. But why does that have to be? Where do you see that in 1367C? Well, the issue here is that it's a new theory on a motion to alter or amend that got raised. And that's not the right place to raise a new theory. It's not a new theory. I mean, everybody can assume that when they're supplemental state claims, the district judge understands what the rules are about either retaining them or returning them back to the state court. I mean, sometimes people file these 1983 actions right away in federal court, which case it's kind of their problem because they're not getting the flexibility that state courts would give them. When they start out in state court and then they're pulled into federal court through removal, it seems pretty reasonable to let them go back to state court. Sure, Your Honor. Just getting past the procedural issues, the district court properly noted in its decision that even if there had been a request below to relinquish jurisdiction, it would have retained jurisdiction anyways. And that would have been proper in this case because as a matter of judicial economy, when the law is very clear, as it is in this case, the court should retain jurisdiction and decide the state law claims. And in this case, the Tort Immunity Act, it's an immunity from suit that should be decided as early as possible in the litigation. Right, but here's the problem. He has that section in the opinion. And what I'm concerned about, I'm not finding it instantly, but what I'm concerned about is whether he gets beyond the Tort Immunity Act and moves into some of these other more specific statutes. Your Honor, in the race opinion and Doe 3, the Illinois Supreme Court very clearly held that it will not read in any sort of willful and wanton exception into the Tort Immunity Act unless it's explicitly provided. And that overruled prior opinions that I believe Mr. Flaxman was referencing. But what about these other statutes, like the domestic violence, whatever it is, the domestic statute? Sure, Your Honor. That argument under the domestic violence statute was raised for the first time on reply in this appeal. Right, because this whole case is at such an early stage. You don't have to plead legal theories and complaints. Of course things are going to be raised at a later stage when hardly anything has happened. Sure, Your Honor. If you look at the facts of this case, they don't even come close to implicating the Domestic Violence Act. Officer DelBocchio was called to respond to nine teenagers who were smoking and drinking by a dumpster, including two females. By the time he got there, as is alleged, the alcohol was thrown away. The teenagers were on their way home. Five of them were already gone. And Officer DelBocchio made the decision just to let them go on their way and go home. Why did he make the report he did that to dispatch? He said when he got there, nobody was there. Your Honor, I can't. Those are allegations that are unsubstantiated at this point. But you have to accept them for purposes of your argument right now. I understand that, and I can't speak to any motive there might have been for that. But that certainly doesn't implicate the Domestic Violence Act. And also, I'd like to point the Court to the Illinois Supreme Court's recent decision in Lacey. It cites 232 ILL 2D3409, where the Court looks at what duties a police officer has under the Domestic Violence Act. And in that case, there's actually a restraining order in place. And the Illinois Supreme Court looked at whether, and then, let me back up. Actually, my issue is an even more fundamental one. The state, not the federal government, but the states in our system, are the ones with the basic responsibility toward minors, toward children. And that comes up in many different guises. And this officer is called by this apartment manager, Mr. Fregoso, because he's concerned about some minors. Taking the facts as alleged, it's absolutely apparent that the girl is wasted. And he just decides he's not going to do anything about that. She's impaired. If she'd had a broken leg, maybe he would have done something. I don't know whether he's distinguishing between impairment by alcohol and impairment by broken leg, but it's very disturbing that from a state law point of view, you think there's absolutely nothing. I think you must think that the state doesn't, in fact, have responsibility for minors. Your Honor, the Illinois legislature saw fit to pass the Tort Immunity Act as it is, and believe it should be applied as the Illinois state legislature passed it. But here's what's never been explored, is how the Tort Immunity Act fits in with other statutes that the General Assembly has passed, whether it always trumps every single statute, whether there are other statutes that say, where it's the effect of notwithstanding the Tort Immunity Act, A and B will be liable. I mean, I haven't done that research. I haven't browsed through the entire set of Illinois statutes, but I don't know the answer to that. Your Honor, in this case, there's no statute that's been pointed to that could possibly apply, and it's very clear as a matter of state law that the claims are barred, any of the state claims are barred, as the district court correctly noted. Does the case law in Illinois, do Illinois courts decide these tort immunity issues on the pleadings as opposed to the assembly judgment? Your Honor, I can't point to any specific decisions. I'm not sure about that question either way, Your Honor, to be honest. I also just want to point out to the court that, you know, that the name calling, calling Officer Dabokshi a racist doesn't make it true. The victim was white in this case. It's hard to see how race comes into play. Those allegations came in very, very late in the arguments here. It came in under motion to alter or amend. Mr. Licks, can you address the matter I raised with your brother? I'm a little bit concerned about the falsity of the report combined with calling off the other officer. Did that, in effect, cut the victim off from any other help that she may have received? Your Honor, the fact of the matter is that calling off another officer and even lying, accepting the fact that that's true for purposes of this argument, doesn't rise to the level of a constitutional harm. There's no duty under the Constitution to prevent harms caused by private actors, and the court has taken a very narrow interpretation of what it means to cause or increase danger under Deshaney, and that's turning a potential danger into an actual danger. And here, the actual danger was there the entire time. The danger of what happened was there regardless of whether Officer Dabokshi was dispatched or not dispatched. So what do you think of Mr. Flaxman's emboldening theory that maybe they were going to keep an eye out for somebody who might stop things, private or public, but once the officer comes and goes, they think, fine, now the coast is clear. I don't see how that's even plausible. You have a police officer who comes, speaks with Mr. Balademus, and at that point Mr. Balademus knows that a police officer can place him at the scene of the crime, had seen him with the victim, and there's almost no way he wouldn't get caught based on what he did. It doesn't seem to have deterred him. No, it didn't. That's the only problem with your theory. It's completely counterfactual. Regardless of that, police officers are, as stated by this court in Del Mar Cell, entitled to a presumption of constitutionality. There's no facts alleged that would lead to a reasonable belief that Officer Dabokshi would actually speak words of encouragement or would somehow embolden Christopher Balademus to go and do what he did by leaving the scene. It's just simply not. If you accept the allegations as true, all Officer Dabokshi did is his actions fell short of protecting the plaintiff. He didn't do anything that would actually cause a harm that wasn't already there when the plaintiff was drinking earlier that day with Christopher Balademus. They were already on their way to where they were going. Your Honors, if I may, I'm going to have to go ahead and conclude. The District Court properly dismissed plaintiff's federal claims for multiple reasons. There is no constitutional violation under Section 1983 for purposes of qualified immunity. If there was a constitutional violation, and this is actually a point I hadn't raised before, it certainly wasn't a clearly established constitutional violation to call up another police officer. And then with regards to the issues raised in the motion to alter or amend, those were improperly raised for the first time on that motion, and this Court can affirm for that reason alone. And if not, it's very clear how state law applies in this case. The Supreme Court has stated recently that it will not read in a willful and wanton exception, and also that it will not read in any sort of a special duty exception to the Tort Immunity Act. And the class of one claim just clearly fails on its face. And for those reasons, the District Court should be affirmed. All right. Thank you very much. Anything further, Mr. Flaxman? Probably not. Thanks to both counsel. We will take the case under advisement.